Donald V. HILLEGASS and Karen L. Hillegass, Plaintiffs,

v.

Gregory P. LANDWEHR and Farmers Insurance Exchange, Defendants-Respondents,

EMPLOYERS HEALTH INSURANCE COMPANY and DEF Insurance Company, Defendants,

BURLINGTON AIR EXPRESS and Protective Insurance Company, Defendants-Appellants.

Supreme Court

*No. 92–0619. Oral argument March 30, 1993.—Decided May 18, 1993.*

(Also reported in 499 N.W.2d 652.)

For the defendants-appellants there were briefs (in the court of appeals) & supplemental motion/letter filed by *Joseph J. Ferris* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee and oral argument by *Mr. Ferris.*

For the defendants-respondents there was a brief (in the court of appeals) & supplemental motion/letter filed by *Timothy L. Lyons* and *O'Neill, Schimmel, Quirk & Carroll, S.C.,* Milwaukee and oral argument by *Mr. Lyons.*

HEFFERNAN, CHIEF JUSTICE. This is an appeal on certification from the court of appeals of an order for summary judgment of the circuit court for Racine county, Dennis J. Barry, Judge, that concluded "self-insurance" to be "insurance" within the meaning of the "other insurance" clause contained in the Farmers Insurance Exchange policy and held Burlington Air Express, a self-insured company, to be primary insurer in the instant dispute.[1]

---

[1] The court of appeals on April 9, 1992, permitted the appeal of the non-final order pursuant to sec. 808.03(2), Stats. The court of appeals stated in its order that leave to appeal was granted to clarify further proceedings.

On September 23, 1988, Gregory Landwehr and Bradley Bain, an employee of Burlington Air Express, drove Bain's company car to Chicago on a personal, pleasure trip. Bain drove as far as Racine and Landwehr drove thereafter. Shortly after leaving Racine, Landwehr was involved in a collision with Donald Hillegass, the plaintiff in this case.[2]

Burlington was self-insured at the time of the collision for up to $1 million with an additional $2 million umbrella policy with Protective Insurance Company. Landwehr had his own $250,000 insurance policy with Farmers Insurance Exchange that contained an "other insurance" clause holding Farmers liable for "excess over any other collectible insurance." Landwehr's insurance policy contained the following provisions:

> [Farmers will] . . . pay damages for which any insured person is legally liable because of bodily injury to any person and/or property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer.
>
> If there is other applicable Auto Liability Insurance on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.
>
> *Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.* (Emphasis supplied.)

Burlington asserted on summary judgment that because it was self-insured there was no "other collecti-

---

[2] We are concerned only with the narrow question before us on certification and do not address issues relating to the scope of parties' liability.

ble insurance" within the meaning of the Farmers' policy and therefore Farmers, not Burlington, was the primary insurer. Farmers filed a cross-motion and the court held hearings on February 24, 1992, issuing a non-final order for summary judgment granting Farmers' motion.

■

The question of whether self-insurance constitutes "other collectible insurance" is one of first impression in Wisconsin, one without common law precedent or direct statutory guidance;[3] but one that requires a legal conclusion with respect to Wisconsin insurance doctrine. This court reviews conclusions of law independently and without deference to the decision of the circuit court. *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). The circuit court, relying on out-of-state case law and considerations of public policy, rejected Burlington's argument and concluded that self-insurance constitutes "insurance" within the meaning of the Farmers insurance policy. While not bound by this determination, we nonetheless find persuasive the circuit court's assessment of the public policies and common law doctrines outlined in the decisions of these foreign jurisdictions. We therefore affirm the judgment of the circuit court.

The parties in this dispute rely almost exclusively on the decisions of foreign jurisdictions. Burlington Air Express urges this court to adopt the "majority rule," which distinguishes between insurance and self-insur-

---

[3] Today's decision considers only whether self-insurance qualifies as "other collectible insurance." We limit today's holding to instances involving self-insurance. Insofar as Burlington acknowledged during oral argument that it is a self-insurer, we do not address any question respecting the status of a person who is uninsured.

ance on the basis of the contractual relationship existing between a third-party insurer and its insured. To the contrary, Farmers Exchange advances the "minority rule," in which state courts have defined self-insurance as one subset of the *familia* insurance. We find the designation "majority" or "minority" to be of little assistance in resolving this matter—at most twelve states have considered the instant dispute.[4]

[4] The briefing of the parties along with our own research indicate that the following states have addressed questions similar to the one before this court today.

In respect to certified self-insurers and self-retained deductibles the "majority rule" has been adopted in the following states: Alabama (*e.g., Universal Underwriters Ins. Co. v. Marriott Homes, Inc.,* 238 So. 2d 730, 732 (Ala. 1970)); Florida (*e.g., State Farm Mut. Auto. Ins. Co. v. Universal Atlas Cement Co.,* 406 So. 2d 1184, 1186–7 (Fla. Dist. Ct. App. 1981)); Indiana (*e.g., Eakin v. Indiana Intergovernmental Risk Management Auth.,* 557 N.E.2d 1095 (Ind. Ct. App. 1990); Missouri (*e.g., American Family Mut. Ins. Co. v. Missouri Power & Light Co.,* 517 S.W.2d 110 (Mo. 1974)); New Jersey (*e.g., American Nurses Ass'n v. Passaic Gen. Hosp.,* 484 A.2d 670, 673–74 (N.J. 1984)); New York (*e.g., Aetna Casualty & Surety Co. v. World Wide Rent-A-Car Inc.,* 284 N.Y.S.2d 807 (N.Y. App. Div. 1967); Ohio (*e.g., Physicians Ins. Co. v. Grandview Hosp. and Medical Center,* 542 N.E.2d 706, 707 (Ohio Ct. App. 1988)); Pennsylvania (*e.g., United Nat. Ins. Co. v. Philadelphia Gas Works, etc.,* 289 A.2d 179 (Pa. Super 1972)); and Texas (*e.g., Home Indem. Co. v. Humble Oil & Refining Co.,* 314 S.W.2d 861 (Tex. Civ. App. Dallas 1958)).

The contrary "minority rule" has been announced and followed in the following states: California (*e.g., United States Steel Corp. v. Transport Indem. Co.,* 241 Cal. App. 2d 461, 475, 50 Cal. Rptr. 576, 585 (Cal. Dist. Ct. App. 1966)); Minnesota (*e.g., State Farm Mut. Auto. Ins. Co. v. Budget Rent-A-Car Systems Inc.,* 359 N.W.2d 673 (Minn. Ct. App. 1984)); New Jersey (*e.g., White v. Howard,* 573 A.2d 513 (N.J. Super. Ct. App. Div.

Further, these decisions rely on each other's precedent to the extent that we can not conclude that they represent the individually developed rationale of a number of jurisdictions. We therefore do not premise today's holding on either of these "rules" but instead conclude that the underlying public policies on which Wisconsin insurance law is based, namely the fair and efficient allocation of resources and related expressions of legislative purpose, mandate today's result.

Black's Law Dictionary (1979 ed.) defines "insurance" as "[a] contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss . . . ." Similarly, Webster's New Collegiate Dictionary (1980 ed.) defines "insurance" as a "contract whereby one party undertakes to indemnify or guarantee another against loss . . . ." Whether the contract is one of indemnity or liability, the critical element in both definitions is a contractual shifting of risk in exchange for premiums. Burlington Air Express argues that this risk-shifting necessarily implies the existence of a third-party insurer—one who undertakes the contractual duty to compensate the insured for loss.

We reject Burlington's attempt to impose an implicit contract requirement not specified in the above definitions and instead look to the nature of "self-insurance" in the instant case as articulated by the circuit court. Whereas contractual insurance policies involve a third-party insurer underwriting the insured's risk in exchange for premium payments, self-insurers retain their own risk in exchange for not paying premiums.[5] The parties implicated in the risk-shifting may change

1990) (*but see supra, American Nurses Ass'n v. Passaic Gen. Hosp.*)); and South Carolina (*e.g., Southern Home Ins. Co. v. Burdette's Leasing Serv.,* 234 S.E.2d 870, 872 (S.C. 1977)).

[5] Statutorily, "insurance" includes all of the following:

depending on the particular arrangement, but the essence of the transaction remains the same: exchanging future liability for premium payments. In the words of the circuit court: "self insurance is just a form of insurance . . . . the modifying term 'self' just indicates where it emanates . . . ."

In the instant case, Burlington Air Express chose to retain its own risk for the first $1 million rather than pay premiums to a third-party insurer. In so deciding, Burlington was able to exercise its business discretion in devising a scheme of risk management that it considered most advantageous. A different company might have reached a contrary conclusion and contracted for coverage with a third-party insurer. Unlike states that mandate insurance contractual coverage and thereby preclude companies or individuals from selecting an arrangement best suited to their particular needs, the Wisconsin legislature has left this decision to the affected entity. Wisconsin companies may self-retain a limited amount of risk, purchase full third-party coverage or opt to remain entirely uninsured and expose themselves to unlimited liability.

Burlington Air Express urges this court to hold that only those entities contracting for third-party coverage be construed as having "collectible insurance"

1. Risk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money.

2. Contracts of guaranty or suretyship entered into by the guarantor or surety as a business and not as merely incidental to a business transaction.

3. Plans established and operated under ss. 185.981 to 185.985 [relating to cooperative sickness care].

Wis. Stats., § 600.03(25)(a) (1991–92). It is clear from this list that the legislature intended "insurance" to include more than the traditional third-party contractual arrangement.

within the meaning of Farmers' insurance policy. We disagree. Burlington's proposed construction misinterprets legislative intent and undermines the public policies underlying Wisconsin insurance law. Specifically, the legislative decision to permit companies to select the manner in which they are to be "insured" or financially responsible for liability to others should not be confused with Burlington's contention that self-insured companies be permitted to avoid the obligations and duties that arise from operating motor vehicles in Wisconsin. Insofar as Burlington operates motor vehicles within the state of Wisconsin, it is subject to the risks and liabilities attending that operation—whether it self-retains the risk or contractually shifts the risk to a third-party.

Farmers offers several arguments why interpreting "other collectible insurance" to include self-insurance will further the public policies underlying Wisconsin insurance law. We find these arguments persuasive and reiterate them in support of today's holding. Farmers asserts, and we agree, that it would be fundamentally unfair and contrary to legislative intent to permit companies such as Burlington Air Express to self-insure and thereby escape both the expense of premium payments and the possibility of being held liable as primary insurer. *See e.g., White v. Howard,* 573 A.2d 513 (N.J. Super A.D. 1990). As noted supra, the fact that the legislature permits companies to formulate the most efficient insurance coverage should not be misconstrued as a device to avoid liability by the self-retention of risk.

Moreover, it is undisputed that Burlington would be primarily liable as an omnibus insurer for Landwehr's negligence had Landwehr not purchased a

83

policy of insurance from Farmers.[6] It seems inappropriate to permit Burlington to escape liability merely because Landwehr chose to purchase an individual insurance policy when in fact Burlington would otherwise be responsible. The legislature opted against making insurance coverage compulsory in Wisconsin, but this is not to say that the legislature wishes to encourage persons to forego arranging for financially responsible liability protection. Rather, the goal should be to encourage individuals to select the type of coverage best suited to their specific needs.

Further support for interpreting "other insurance" to include both third-party contractual insurance and self-insurance may be found in related statutory provisions. For example, sec. 344.30, Stats., sets forth methods of giving proof of financial responsibility and states in part that:

> A certificate of self-insurance as provided in s. 344.16, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, *the self-insurer will pay the same amounts that an insurer would have been obligated to pay under a motor vehicle liability policy if it had issued such a policy to such self-insurer.* (Emphasis supplied.)

Wis. Stats., § 344.30(4) (1991–92). We recognize that this section does not specifically apply to the particular situation here because Burlington was not a certified self-insurer as specified in sec. 344.16, Stats., nevertheless, we find the language of the statute helpful as an expression of legislative intent with respect to self-

---

[6] During oral argument, counsel for Burlington noted that for the purpose of this appeal only it was conceded that Landwehr was a user with permission.

insurers generally. Section 344.30(4) makes explicit our conclusion here that permitting individuals to self-retain risk was not intended by the legislature to be a device by which self-insurers could escape the liabilities that would attach to third-party insurers.

█

Because we conclude that self-insurance constitutes "other collectible insurance" we decline to address Burlington's additional challenges to the draftsmanship of the Farmers Exchange insurance policy. Although Farmers Exchange might have drafted a more detailed "other collectible insurance" clause, that does not affect our conclusion. The phrase "other collectible insurance" necessarily embraces all forms of insurance, including self-insurance. Under the facts here the primary insurer is Burlington, collectible as self-insurance, and Farmers' coverage is excess.

Although the majority rule relating to self-insurance and "other insurance" clauses has been to release the self-insurer from the liabilities assessed those companies with third-party insurance, some commentators have foreseen a shift toward the conclusion reached in today's holding that contractual insurance and self-insurance should be treated alike. One commentator's assessment of the current trend in insurance coverage seems particularly apposite to the instant situation:

> As insurer and self-insured begin to look more and more alike as far as size and profitability . . . courts may soon strive for a more equitable apportionment of liability between the party that has determined to self-insure and the insurer that has contracted to insure on an excess basis.

Lawrence I. Brandes, *Several Special Problems of Self-Insurance,* in Commercial Law and Practice Course

Handbook Series Techniques of Self-Insurance 1987: Corporate Survival in a World with Inadequate Commercial Insurance (Oct. 1, 1987) (PLI). We find the policy arguments put forth by Farmers consonant with the public policies underlying Wisconsin insurance law and as expressed by the legislature, and the most equitable resolution to the instant dispute.

*By the Court.*—Order of the circuit court affirmed and the cause remanded for further proceedings.