BROWN COUNTY,
d/b/a Brown County Mental Health Center,
Plaintiff-Appellant-Cross-Respondent,

v.

OHIC INSURANCE COMPANY,
Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 2006AP1063. Submitted on briefs February 5, 2007.
—Decided February 27, 2007.*

2007 WI App 46

(Also reported in 730 N.W.2d 446.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry*, Green Bay.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *David J. Pliner* of *Corneille Law Group, L.L.C.*, Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. This is a coverage dispute between Brown County and one of its insurers, OHIC Insurance. Brown County was sued several years ago when a patient died at a county facility. The County's liability was covered by two insurance policies: one with Wisconsin Municipal Mutual Insurance Company (WMMIC) and another with OHIC Insurance. Both policies provided primary coverage. The WMMIC policy required the County to pay the first $100,000 as a "self-insured retention." The OHIC policy provided full coverage. The two insurance companies settled the suit. As part of WMMIC's contribution, the County paid the first $100,000. In this action the County seeks to recoup from OHIC its $100,000 payment to WMMIC.

¶ 2. The OHIC policy contains an "other insurance" clause. The circuit court concluded that, under the clause, OHIC did not cover reimbursement for other insurance. The question, however, was whether the $100,000 self-insured retention was other insurance. The circuit court concluded it was and granted OHIC summary judgment. We disagree and reverse the judgment.[1]

---

[1] The circuit court granted only partial summary judgment to OHIC. OHIC cross-appeals the portion of the court's decision refusing to grant summary judgment. On appeal, OHIC argues the cross-appeal is moot because the court's conclusion that the County's agreement with WMMIC disposed of the County's suit in its entirety. The County agrees the cross-appeal is moot. We

## Facts

¶ 3. This case arises out of a previous suit against the County precipitated by the death of Tiffany Rohr, a developmentally disabled young woman. Rohr died on November 13, 2000 as a result of injuries she sustained while attempting to escape from Bayview Developmental Center.

¶ 4. At the time, the County had two insurance policies in effect. The first, issued by WMMIC, covered the County's general liability, excluding medical professional liability. The policy had a $5 million limit of liability and a "self-insured retention" of $100,000. The policy covered damages only after the self-insured retention was exhausted. This meant the County was liable for the first $100,000 of any covered loss, after which WMMIC would cover the next $5 million of the loss.

¶ 5. The second policy was a hospital professional liability and general liability insurance policy issued by OHIC to Brown County, d/b/a Brown County Mental Health Center.[2] The OHIC policy had a limit of $1 million per "medical incident," a $1 million bodily injury limit for each occurrence, and no deductible or self-insured retention.

¶ 6. Because of the nature of the claims against the County, both the WMMIC and the OHIC policies

therefore treat this appeal as an appeal of a grant of full summary judgment to OHIC.

[2] The OHIC general liability and professional liability policies are two separate policies. However, the policy language in question is identical in both, and the parties do not distinguish in any way between the two in their analyses. For clarity, in this opinion we refer to all coverage issued by OHIC as the OHIC policy.

provided coverage.[3] In the course of the Rohr litigation, the County paid $100,000 to WMMIC to satisfy its self-insured retention. WMMIC and OHIC then settled the litigation, with both contributing to the settlement.

¶ 7. After the conclusion of the Rohr litigation, the County filed this suit against OHIC to recoup its $100,000 payment to WMMIC. In its motion for summary judgment, the County argued it was entitled to the $100,000 because the OHIC policy covered Rohr's claim in full, without any deductible, and OHIC was therefore required to reimburse the County for its payment toward the first $100,000 of Rohr's claim. OHIC responded that the County's self-insured retention was in fact a form of insurance, not a deductible. Relying on its other insurance clause, OHIC argued the County had no right to reimbursement of funds the County paid out as its own insurer.

¶ 8. The circuit court concluded that "other insurance" included the County's self-insured retention agreement with WMMIC. The court then interpreted the OHIC "other insurance" clause to mean that OHIC provided coverage only after the County paid the first $100,000 of Rohr's claim. The court therefore granted summary judgment to OHIC.

STANDARD OF REVIEW

¶ 9. The meaning of an insurance contract is a question of law, reviewed without deference to the circuit court *Gresens v. State Farm Mut. Auto. Ins. Co.*, 2006 WI App 233, ¶ 6, 297 Wis. 2d 223, 724 N.W.2d 426.

---

[3] In circuit court proceedings in this case, OHIC contested coverage for portions of Rohr's damages; however, it does not renew that argument in this appeal.

Similarly, whether summary judgment is appropriate is a question of law reviewed without deference to the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987).

### DISCUSSION

¶ 10. The result in this case hinges on whether the County's self-insured retention agreement with WMMIC was "other insurance" for purposes of the OHIC other insurance clause.[4] OHIC concedes that if the County's agreement with WMMIC was not "other insurance," it is liable for the first $100,000 of Rohr's claim. We conclude the OHIC policy is ambiguous as to whether the County's agreement with WMMIC was "other insurance," and therefore construe the OHIC policy as providing coverage.[5]

¶ 11. Insurance policies are interpreted as they would be by a reasonable person in the position of the insured. *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2002 WI 31, ¶ 28, 251 Wis. 2d 561, 641 N.W.2d 662. If the

---

[4] The OHIC other insurance clause is lengthy. Because the only question is whether the County's agreement is "other insurance" and the clause provides no guidance as to the definition of "other insurance," the entire clause need not be recited here.

[5] In the alternative, the County argues it is entitled to recover most of its payment from OHIC even if its agreement was "other insurance." Because we conclude its agreement with WMMIC was not "other insurance," we need not consider this alternative argument. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.,* 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

reasonable insured could read the policy as having more than one meaning, the policy is construed against the insurer and in favor of coverage. *Id.* Exclusions from coverage are construed narrowly. *First American Title Ins. Co. v. Dahlmann*, 2006 WI 65, ¶ 41, 291 Wis. 2d 156, 715 N.W.2d 609.

¶ 12. "Other insurance" is not defined in the OHIC policy. We therefore begin with the dictionary. *See Everson v. Lorenz*, 2005 WI 51, ¶ 15, 280 Wis. 2d 1, 695 N.W.2d 298. As applicable here, "insurance" is defined in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1173 (unabr. 1993), as "coverage by contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril."

¶ 13. One meaning of insurance is the one urged by OHIC and adopted by the circuit court: that self-insurance is "just a form of insurance . . . the modifying term 'self' just indicates where it emanates . . . ." *Hillegass v. Landwehr*, 176 Wis. 2d 76, 82, 499 N.W.2d 652 (1993). Put another way, although no premiums are actually exchanged, the essence of self-insurance is the same as third party insurance: "exchanging future liability for premium payments." *Id.*

¶ 14. The County, however, argues another interpretation is reasonable. The County argues that from an insured's perspective, a self-insured retention is in fact no insurance at all, or insurance with a very large deductible. *See Sybron Transition Corp. v. Security Ins. of Hartford*, 258 F.3d 595, 598 (7th Cir. 2001) (self-insurance is best described as "insurance with a big deductible."). The County argues that it could reasonably interpret the term "insurance" in OHIC's policy as referring only to situations where "one party undertakes to indemnify or guarantee another against loss."

WEBSTER'S, *supra,* at 1173. In other words, the County argues "insurance" could refer only to agreements where third parties agreed to insure the County against risk, not agreements whereby the County agreed to pay its losses itself.

¶ 15. We agree with the County. We are required to view this language from the position of a reasonable insured in the place of the County. *Gillette,* 251 Wis. 2d 561, ¶ 28. From the County's perspective, the only question that matters is who is liable: the County or someone else. The County's policy with WMMIC characterized the County's obligation as self-insurance, but from the County's perspective the policy could just as well have stated there was "no coverage" for the first $100,000 of a given claim.

¶ 16. A contrary result would in effect allow OHIC to graft WMMIC's policy language into its other insurance clause. That is, even though the County's arrangement with WMMIC operated in exactly the same way as a deductible, OHIC is asking this court to find WMMIC's use of the term "insurance" to describe the $100,000 dispositive. We decline to do so. OHIC had the opportunity to define "other insurance" to include payments made by its own policyholder. It failed to do so.

¶ 17. We therefore conclude a reasonable insured in the County's position could believe that its agreement with WMMIC was not "other insurance" for purposes of the OHIC policy. Because the OHIC clause is ambiguous on this point, we construe it to provide coverage. *Gillette,* 251 Wis. 2d 561, ¶ 28.

¶ 18. The circuit court relied on Hillegass, 176 Wis. 2d at 78, as does OHIC. However, *Hillegass* was a dispute between a self-insured party and an unaffiliated insurer, not a dispute between a self-insured party and

its own insurer. All of the stated reasons for the court's conclusion in *Hillegass* were specific to a dispute between a self-insured party and an unaffiliated third party. Those reasons favor the opposite conclusion here.

¶ 19. *Hillegas* was a dispute over the defendants' insurance coverage in an automobile accident involving a vehicle owned by Burlington Air Express. *Id.* at 78. Burlington self-insured its vehicles for the first $1 million in damages, with an additional $2 million umbrella policy with Protective Insurance Company for damages above $1 million. *Id.* The dispute was between Burlington and Farmers Insurance Exchange, a second insurer who had issued a personal automobile insurance policy to the driver of the vehicle. *Id.*

¶ 20. The Farmers policy provided that in the case of an accident involving a vehicle not owned by its policyholder, the Farmers policy "shall be excess over any other collectible insurance." *Id.* The question before the court was whether Burlington's $1 million self-insurance was "other collectible insurance" as defined in the Farmers policy, which would make Burlington the primary insurer. *Id.* at 78–79.

¶ 21. The court concluded Burlington's self-insurance was in fact "other collectible insurance" as defined in the policy. The court based its holding on "the underlying public policies on which Wisconsin insurance law is based, namely the fair and efficient allocation of resources and related expressions of legislative purpose." *Id.* at 81.

¶ 22. The court identified three reasons why self-insurance was "other collectible insurance." First, allowing self-insurers to avoid being held liable as primary insurers would allow them to reap the benefits of self-insurance but avoid some of the costs. That is, by self-insuring, a party could avoid paying premiums to a

third party insurer. However, if it could avoid primary liability, the self-insured party could also unfairly avoid payouts a third party insurer would be required to make. *Id.* at 81–83.

¶ 23. Second, allowing the self-insured party to avoid becoming a primary insurer would not be consistent with the expectations of the self-insured party. *Id.* at 83. This is because absent another policy, such as the Farmers policy, the self-insured party would otherwise be the primary insurer. *Id.* at 84. Allowing the self-insured party to escape its obligation would allow the self-insured party an unexpected windfall in cases like *Hillegass,* where other insurance existed by happenstance.

¶ 24. Finally, allowing the self-insured party to avoid becoming a primary insurer was contrary to the public policy in Wis. Stat. § 344.30(4) (1991–92).[6] That statute stated that when a certificate of self-insurance was required, the certificate should state that "the self-insurer will pay the same amounts that an insurer would have been obligated to pay" had a third party insurer issued the policy. Wis. Stat. § 344.30(4) (1991–92). While § 344.30(4) did not apply to Burlington, this statute was "helpful as an expression of legislative intent with respect to self-insurers generally." *Hillegass,* 176 Wis. 2d at 84–85.

¶ 25. None of these three listed public policies apply in a dispute between a self-insured party and its own insurer. First, when both a self-insured party and its insurer are liable for a loss, requiring the insurer to cover the loss does not allow the self-insured party to

---

[6] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. Wisconsin Stat. § 344.30(4) remains unchanged from the 1991–92 version.

avoid both paying premiums and making payouts. *See id.* at 83. In *Hillegass*, the self-insured party was attempting to foist its obligations on the third party simply by virtue of its self-insured status. *Id.* Here, however, the County has paid a premium in order to receive coverage from OHIC in this specific situation. The County is simply receiving the benefit it bargained for under its contract with OHIC. It is not attempting to foist its obligation on an unaffiliated third party by virtue of its self-insured status.

¶ 26. Second, requiring the insurer to provide coverage is consistent with the expectations of the self-insured party. *See id.* at 83–84. In *Hillegass*, Burlington would have been the primary insurer absent the unforeseen involvement of the driver's personal insurer. It therefore had no expectation that it would be anything but the primary insurer. Here, however—as in all cases where an insured purchases overlapping insurance policies—the County fully expected coverage in all situations where one or both of its policies covered a loss. OHIC's involvement therefore was not a windfall for the County; the County bargained for coverage in this situation. If anything, the reverse is true: OHIC stands to secure a windfall at its insured's expense because had the County not self-insured, OHIC would have been required to provide coverage for the full amount.

¶ 27. Finally, the legislature's "expression of legislative intent with respect to self-insurers generally" in Wɪs. Sᴛᴀᴛ. § 344.30(4) is counterbalanced by other legislative expressions of intent that apply to relationships between an insured and its insurer but not to self-insurers generally. Specifically, Wɪs. Sᴛᴀᴛ. § 631.43(1)[7] provides:

---

[7] The County argues that OHIC's proposed interpretation of its other insurance clause violates Wɪs. Sᴛᴀᴛ. § 631.43(1).

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions . . . .

¶ 28. Under this statute, when two separate policies cover the same loss, an insured must be allowed to "stack" the policies and receive the full benefit of both. *See Schult v. Rural Mut. Ins. Co.*, 195 Wis. 2d 231, 238, 536 N.W.2d 135 (Ct. App. 1995). This is consistent with a general legislative intention that insureds receive the full benefit of all policies they purchase when those policies overlap. In this case, the County receives the full benefit of both policies only if OHIC provides coverage for the portion of Rohr's settlement not covered by WMMIC.

¶ 29. The court in *Hillegass* specifically tied its holding to "the underlying public policies on which Wisconsin insurance law is based." *Hillegass*, 176 Wis. 2d at 81. Because those underlying policies favor the self-insured party, not its insurer, in a dispute between a self-insured party and its own insurer, *Hillegass* does not control.[8]

---

Because we conclude that OHIC's other insurance clause provides coverage here, we need not decide whether OHIC's interpretation of it would run afoul of § 631.43(1).

[8] OHIC also relies on *Millers Nat'l Ins. Co. v. City of Milwaukee*, 184 Wis. 2d 155, 166–67, 516 N.W.2d 376 (1994). *Millers*, like *Hillegass*, was a dispute between a self-insured party and a third party, this time a subrogated insurer. The court held that the subrogated insurer had the same rights against the self-insured party as if the party had purchased insurance. However, the holding in *Millers* was limited. The court held that "in this context"—i.e. when a self-insurer is

¶ 30. Finally, OHIC argues that other jurisdictions that treat self-insurance as insurance in the third party context also do so in disputes between a self-insured party and its own insurer. It relies principally on *U.S. Steel Corp. v. Transport Indem. Co.*, 241 Cal. App. 2d 461, 50 Cal.Rptr. 576 (Cal. App. 1966). In that case, U.S. Steel was self-insured for the first $100,000 of claims against it. *Id.* at 461. In addition, it was an insured under a policy issued by Transport Indemnity Company.[9] *Id.* at 461, 474. The court concluded U.S. Steel's self-insurance was primary and Transport was excess, and ordered U.S. Steel to pay the first $100,000 of the plaintiff's claim. *Id.* at 475.

¶ 31. We do not find *U.S. Steel* persuasive, for two reasons. First, Transport's other insurance clause specifically stated it applied "if there is other insurance or self-insurance against an occurrence covered by this policy." *Id.* at 475. Because Transport's policy language specifically included self-insurance, U.S. Steel did not argue the policy was ambiguous as to whether U.S. Steel's self-insurance agreement was in fact "insurance." *Id.* The court therefore did not address the question posed in this case.

¶ 32. More fundamentally, however, we are unwilling to simply adopt a rule from another jurisdiction in view of the conflicting positions reached by the

confronted with a claim from a subrogated third party—"self-insurance is considered merely another form of insurance." *Millers*, 184 Wis. 2d at 166–67.

[9] Transport had issued the policy to an unaffiliated third party; however, because U.S. Steel was an additional insured under it, the same rules of construction applied as if Transport had issued the policy to U.S. Steel. *See U.S. Steel Corp. v. Transport Indem. Co.*, 241 Cal App. 2d 461, 473, 50 Cal.Rptr. 576 (Cal. App. 1966).

courts that have considered this question.[10] Like our supreme court in *Hillegass*, we instead base our holding on Wisconsin insurance law and the policies behind it. *Hillegass*, 162 Wis. 2d at 81. As explained above, Wisconsin insurance law and the policies behind it weigh in favor of the County. We therefore reverse and remand with directions to grant summary judgment to the County.

*By the Court*—Judgment reversed and cause remanded with directions.

---

[10] OHIC relies on *U.S. Steel* and *Odessa School Dist. No. 105 v. Insurance Co. of America*, 791 P.2d 237, 243 (Wash. App. 1990). The County cites *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1075 (7th Cir. 2004), and *Cargill, Inc. v. Commercial Union Ins. Co.*, 889 F.2d 174, 179 (8th Cir. 1989), among others.