# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP907 |
| COMPLETE TITLE: | Kenneth C. Burgraff, Sr. and Linda Burgraff,<br>      Plaintiffs-Respondents,<br>   v.<br>Menard, Inc.,<br>      Defendant-Appellant-Cross Petitioner,<br>Millers First Insurance Company,<br>      Defendant-Respondent-Petitioner,<br>Walmart Stores, Inc. Associates Health and<br>Welfare Plan,<br>      Defendant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 356 Wis. 2d 282, 853 N.W.2d 574)
(Ct. App. 2014 – Published)
PDC No. 2014 WI App 85

| | |
|---|---|
| OPINION FILED: | February 24, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 17, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Eau Claire |
|   JUDGE: | Michael A. Schumacher |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   CONCUR & DISSENT: | ROGGENSACK, C.J., ZIEGLER, J., concur and dissent. (Opinion Filed) |
|   NOT PARTICIPATING: | GABLEMAN, R.G.BRADLEY, J.J., did not participate. |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs by *John C. Possi* and *Mueller, Goss & Possi, S.C.,* Milwaukee, and oral argument by *John C. Possi.*

For the defendant-appellant-cross-petitioner, there were briefs by *Jeffrey S. Fertl,* and *Hinshaw & Culbertson LLP,* Milwaukee, and oral argument by *Jeffrey S. Fertl.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP907
(L.C. No.   2011CV270)

STATE OF WISCONSIN                    :      IN SUPREME COURT

Kenneth C. Burgraff, Sr. and Linda Burgraff,

      Plaintiffs-Respondents,

   v.

Menard, Inc.,

      Defendant-Appellant-Cross Petitioner,

Millers First Insurance Company,

      Defendant-Respondent-Petitioner,

Walmart Stores, Inc., Associates Health and Welfare Plan,

      Defendant.

**FILED**

**FEB 24, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded to the circuit court for a determination of damages*.

¶1   ANN WALSH BRADLEY, J.   Petitioner, Millers First Insurance Company ("Millers First"), seeks review of a published decision of the court of appeals that reversed the circuit

court's order for summary judgment.[1]  The circuit court determined that Millers First no longer had a continuing duty to defend Menard after the plaintiff, Kenneth Burgraff ("Burgraff"), reached a settlement with Millers First for its proportionate share of the plaintiff's claim.  In reversing, the court of appeals concluded that Millers First had a continuing duty to defend and that it breached the duty when it withdrew its defense of Menard following the Burgraff settlement.

¶2  Millers First argues that its "limits of liability for this coverage" were exhausted when it settled with Burgraff for $40,000 because that amount represented its maximum proportional liability for Burgraff's claim.  Once it satisfied its proportionate share of Burgraff's claim, Millers First contends it had no further duty to defend Menard even though it had not paid its full $100,000 limit of liability.

¶3  We conclude, under the terms of the policy, Millers First was required to provide a defense for Menard until it paid its $100,000 limit of liability.  Like the court of appeals, we determine that Millers First breached its duty to defend when it withdrew its defense of Menard following the settlement with Burgraff.

¶4  Cross-petitioner, Menard, Inc., seeks review of that part of the court of appeals opinion that affirmed a judgment of

---

[1] <u>Burgraff v. Menard, Inc.</u>, 2014 WI App 85, 356 Wis. 2d 282, 853 N.W.2d 574 (affirming and reversing orders of summary judgment entered by the circuit court for Eau Claire County, Michael A. Schumacher, J., presiding).

the circuit court determining that Menard's $500,000 self-insured retention qualified as "other applicable liability insurance" under the Millers First policy's "other insurance" clause. The court of appeals concluded that Menard's self-insured retention was "other insurance" pursuant to this court's decision in Hillegass v. Landwehr, 176 Wis. 2d 76, 499 N.W.2d 652 (1993).

¶5 Menard argues that its self-insured retention does not constitute "other insurance" under the Millers First policy's "other applicable liability insurance" clause. It contends that because it is a permissive user of Burgraff's vehicle, this case involves a dispute between a self-insured party and its own insurer and is governed by Brown County v. OHIC Ins. Co., 2007 WI App 46, 300 Wis. 2d 547, 730 N.W.2d 446.¶5 We agree with the court of appeals that Hillegass, and not Brown County, controls the outcome of this case. Like the court of appeals, we determine that Menard's self-insured retention is "other applicable liability insurance" under the Millers First policy's "other insurance clause."

¶6 Accordingly, we affirm the Court of Appeals and remand to the circuit court for a determination of damages.

I.

¶7 The relevant facts of this case are not in dispute. Kenneth Burgraff was injured when a Menard employee loaded materials onto Burgraff's trailer using a forklift. Burgraff sued Menard for damages.

3

¶8 Burgraff's vehicle and trailer were insured under an automobile insurance policy issued by Millers First. The declaration page provides for a $100,000 per person bodily injury liability limit. Its insuring agreement states:

> We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.

¶9 The insuring agreement also addresses Millers First's duty to defend:

> In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We are not obligated to provide defense after we have paid our limits of liability in settlement of claims or suits. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

¶10 Further, the Millers First policy contains the following "other insurance" clause:

> If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

¶11 Menard contended that it was entitled to coverage under the Millers First policy as a permissive user of Burgraff's vehicle and tendered defense of Burgraff's claim to Millers First. See Blasing v. Zurich Am. Ins. Co., 2014 WI 73,

4

356 Wis. 2d 63, 850 N.W.2d 138. Millers First agreed to defend Menard subject to a reservation of rights, but later conceded that it had a duty to defend, agreeing that Menard was entitled to coverage under Burgraff's automobile policy.

¶12 Menard was also insured for excess coverage under a commercial general liability policy issued by CNA. The excess policy had a liability limit of $500,000. CNA's policy contained an "other insurance" clause that provides:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> . . .
>
> b. Excess Insurance
>
> (1) This insurance is excess over:
>
>> (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> . . .
>
>> (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft . . .
>
> (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
>> (a) The total amount that such other insurance would pay for the loss in the absence of this insurance; and

> (b) The total of all deductible and self-insured amounts under all that other insurance.
>
> . . .
>
> c. Method of Sharing
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

¶13 CNA's policy also includes a self-insured retention endorsement as follows:

> In consideration of the premium charged, it is agreed that the limits of insurance for [] the coverages provided by this policy . . . will apply excess of a self-insured retention (hereinafter referred to as the Retention Amount)[.]

¶14 The "retention amount" is $500,000 per occurrence. Under the self-insured retention endorsement, Menard is required to pay the first $500,000 worth of damages and defense costs arising from an occurrence.

¶15 Millers First moved for partial summary judgment on the grounds that Menard's $500,000 self-insured retention qualified as "other applicable liability insurance" under the Millers First policy's "other insurance" clause. It asked the

circuit court to declare that under the "other insurance" clause, Millers First's share of any verdict or settlement would be one-sixth of the total $600,000 liability limits of the two policies combined.[2] This amount represents the Millers First policy's $100,000 limit of liability added to Menard's $500,000 self-insured retention amount. The circuit court granted Millers First's motion.

¶16 During mediation, Millers First settled Burgraff's claim for $40,000. The settlement agreement between Burgraff and Millers First agreed to "fully discharge Miller First Insurance Company and one-sixth of any liability that Menard, Inc. may have to [] Burgraff." Menard did not settle with Burgraff at mediation.

¶17 Subsequently, Millers First moved for summary judgment on the grounds that it no longer had a duty to defend Menard because it had fully satisfied its duty to pay one-sixth of any verdict or settlement. Again, the circuit court granted Millers First's motion.

¶18 Menard moved to bifurcate and stay the trial on the merits of Burgraff's claim pending resolution of the coverage

---

[2] Apparently the parties agreed that Burgraff's damages would not exceed $600,000. The jury ultimately awarded the plaintiffs damages in the amount of $345,396.07, which was further reduced due to the jury's finding of contributory negligence.

7

issues on appeal. Millers First took no position on Menard's motion to bifurcate and stay. The circuit court denied Menard's motion and the case proceeded to trial.[3]

¶19 On appeal, Menard argued: (1) its self-insured retention was not "other insurance," and (2) Millers First had a continuing duty to defend Menard because Millers First settled with the plaintiff for less than its $100,000 limit of liability. The court of appeals affirmed the circuit court's determination that Menard's self-insured retention was "other insurance" and reversed the circuit court's determination that Menard no longer had a duty to defend. Burgraff v. Menard, Inc., 2014 WI App 85, ¶¶2-3, 356 Wis. 2d 282, 853 N.W.2d 574.

## II.

¶20 In this case we are asked to review the circuit court's grant of summary judgment. We review grants of summary judgment independently, applying the same methodology employed by the circuit court. Belding v. Demoulin, 2014 WI 8, ¶13, 352 Wis. 2d 359, 843 N.W.2d 373. Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the

---

[3] The circuit court's decision on Menard's motion to bifurcate and stay was affirmed by the court of appeals. That issue is not before us.

8

moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2) (2013-2014).[4]

¶21 Here there is no genuine issue of material fact. Therefore, we focus on the terms of the parties' insurance policies, which are contracts for insurance. Construction of an insurance policy presents a question of law, which we review independently of the determinations rendered by the circuit court and the court of appeals. Folkman v. Quamme, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857.

¶22 This court follows the well-established rules of insurance contract interpretation. Insurance policies are interpreted as they would be by a reasonable person in the position of the insured. State Farm Mut. Auto. Ins. Co. v. Gillette, 2002 WI 31, ¶28, 251 Wis. 2d 561, 641 N.W.2d 662. "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses——so long as the language conforms to statutory and administrative law——ambiguity in that language is construed in favor of an insured seeking coverage." Froedtert Mem'l Lutheran Hosp. v. Nat'l States Ins., 2009 WI 33, ¶43, 317 Wis. 2d 54, 765 N.W.2d 251; see also First Am. Title Ins. Co. v. Dahlmann, 2006 WI 65, ¶41, 291 Wis. 2d 156, 715 N.W.2d 609.

III.

---

[4] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

¶23 We address first the argument raised by Menard's cross-petition because it is foundational to our subsequent discussion. Menard contends that the court of appeals erred when it determined that Menard's self-insured retention qualifies as "other applicable liability insurance" under the Millers First policy's "other insurance" clause.

¶24 A self-insured retention obligates the insured to pay the first level of loss before excess insurance coverage is applied to the claim. Menard's CNA insurance policy consisted of a self-insured retention of $500,000, with an additional $500,000 in excess coverage provided by CNA.

¶25 If Menard's self-insured retention is not "other applicable liability insurance," then it would be treated as excess coverage——not primary coverage. Thus, Menard asserts that Millers First's $100,000 limit of liability would have to be exhausted before Menard had any responsibility to pay Burgraff's claim.

¶26 As is the case here, an insured may have more than one insurance policy that provides coverage for the same risk. Coverage is either primary or excess. Primary insurance coverage provides "first-dollar" coverage up to the policy's limit of liability. See Arnold P. Anderson, Wisconsin Insurance Law § 11.12 (7th Ed. 2015). Excess insurance coverage attaches only after a predetermined amount of primary insurance coverage has been exhausted. Id. at § 11.14.

¶27 "Whenever two policies apply to the same insured at the same time, the issue of which policy must pay first——or

10

which is primary and which is excess——is dealt with by 'other insurance' clauses."  Id. at § 11.3.  Wis. Stat. § 631.43(1) governs other insurance provisions:

> When 2 or more policies promise to indemnify an insured against the same loss . . . .  The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided.

Millers First's other insurance clause states: "If there is other applicable liability insurance, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits."

¶28  The circuit court determined that Menard's self-insured retention was "other applicable liability insurance" under the terms of the Millers First "other insurance" clause. In applying the terms of the Millers First "other insurance" clause, the circuit court divided responsibility for paying any settlement or verdict between Millers First and Menard in proportion to their limits of liability.[5]  Its interpretation was impelled by this court's determination in Hillegass when we

_____

[5] Like the court of appeals, we decline to apply the "other insurance" clause from the CNA policy.  See Burgraff v. Menard, Inc., 2014 WI App 85, ¶¶15-17, 356 Wis. 2d 282, 853 N.W.2d 574. We agree that the CNA policy's "other insurance" clause does not apply to Menard's self-insured retention because it only applies to CNA's obligations once the self-insured retention is exhausted.  See id.

11

concluded that self-insurance constitutes "other collectible insurance." 176 Wis. 2d at 85.

¶29 The plaintiff in Hillegass was injured in a motor vehicle collision involving a vehicle owned by Burlington Air Express. Id. at 78. Burlington was self-insured at the time of the collision for up to $1 million with an additional $2 million umbrella policy. Id.

¶30 The defendant driver had his own insurance policy with Farmers Insurance Exchange that contained an "other insurance" clause. Id. Farmer's policy provided that it was "excess over any other collectible insurance." Id. Burlington asserted on summary judgment that because it was self-insured there was no "other collectible insurance" within the meaning of the Farmers' policy and therefore Farmers, not Burlington, was the primary insurer. Id. at 78-79.

¶31 The Hillegass court concluded that "self-insurance constitutes 'other collectible insurance'," explaining that self-insurers retain their own risk in exchange for not paying premiums:

> Whereas contractual insurance policies involve a third-party insurer underwriting the insured's risk in exchange for premium payments, self-insurers retain their own risk in exchange for not paying premiums. The parties implicated in the risk-shifting may change depending on the particular arrangement, but the essence of the transaction remains the same: exchanging future liability for premium payments.

Id. at 81-82. It emphasized "the fact that the legislature permits companies to formulate the most efficient insurance

12

coverage should not be misconstrued as a device to avoid liability by the self-retention of risk." Id. at 83.

¶32 We agree that Menard's responsibility under its self-insured retention ought to be analyzed in terms of how it shifted risk in exchange for premium payments. Menard, like Burlington Air in Hillegass, chose to retain its own risk for the first $500,000 of liability coverage. In doing so, Menard avoided paying premiums to a third-party insurer for that coverage. Menard gained the benefit of lower premiums with the risk of the self-insured retention. In addition, Menard's CNA insurance policy explicitly states that its excess coverage with CNA attaches only after Menard's self-insured retention has been exhausted. Thus, Menard understood that it had an obligation as a primary insurer up to the limits of its $500,000 self-insured retention.

¶33 Menard argues that Brown County, not Hillegass, controls the outcome because the dispute between Menard and Millers First is between an insured and its own insurer. It contends that because it is a permissive user of Burgraff's vehicle under Blasing, Menard has the same rights under the Millers First policy as if it were the named insured. See Blasing, 356 Wis. 2d 63, ¶¶41, 52. Menard's argument is based on this Court's statement in Blasing that "[o]ur case law makes no distinction between injured parties who are named insured and other insureds." Id., ¶74.

¶34 We disagree with Menard that Brown County controls the outcome of this case. In Brown County, the County was sued when

13

a patient died at a county facility.  300 Wis. 2d 547, ¶1.  The County's liability was covered by two insurance policies.  Id. Both policies provided primary coverage, but one policy required the County to pay the first $100,000 as a "self-insured retention."  Id.

¶35 The court of appeals determined that the insurance policy in Brown County was ambiguous as to whether the self-insurance agreement with Wisconsin Municipal Mutual Insurance Company was "other insurance."  Id., ¶10.  It further concluded that the self-insured retention at issue operated more like a deductible than insurance coverage.  Id., ¶16.  Significantly, Brown County explained that the public policy relied on in Hillegass did not apply in a dispute between a self-insured party and its own insurer.  Id., ¶18.

¶36 Brown County created a narrow exception to Hillegass when an "other insurance" clause is ambiguous, operates in exactly the same way as a deductible, and involves a dispute between a self-insured party and its own insurer.  Menard contends that because it is a permissive user of Burgraff's vehicle, this case involves a dispute between a self-insured party and its own insurer.  However, this case is distinguishable from Brown County.

¶37 Menard's self-insured retention operates differently than a deductible.  Menard's policy with CNA states:  "The S.I.R. [self-insured retention] shall be eroded by allocated claim costs including defense . . . ."  Self-insured retentions are distinct from deductibles when the insured is obligated to

14

retain its own defense counsel. See Anderson, <u>Wisconsin Insurance Law</u>, § 11.12. That is exactly the case here.

¶38 More importantly, this is not a dispute between an insured and its own insurer. In <u>Brown County</u>, the court explained that "when both a self-insured party and its insurer are liable for a loss, requiring the insurer to cover the loss does not allow the self-insured party to avoid both paying premiums and making payouts." <u>Id.</u>, ¶25. The fact that the County purchased both policies led the Brown County Court to conclude that this "was not a windfall for the County; the County bargained for coverage in this situation." <u>Id.</u>, ¶26.

¶39 In <u>Brown County</u>, both insurance policies were purchased by the County. Although Menard may benefit from coverage as a permissive user, that does not place Menard in the same shoes as the insured in <u>Brown County</u>. Menard's argument is unpersuasive because it ignores the fact that it did not bargain or pay for the $100,000 in liability coverage available under the Millers First policy.

¶40 Unlike in <u>Brown County</u>, this argument would result in a windfall for Menard because it could both avoid paying premiums and making payments under its self-insured retention. Here, as in <u>Hillegass</u>, it would be "fundamentally unfair and contrary to legislative intent" to permit companies such as Menard to self-insure and thereby escape the expense of premium payments as well as the possibility of being held liable as a primary insurer. 176 Wis. 2d at 83.

15

¶41 Brown County did not analyze the self-insured retention in terms of how it shifted risk in exchange for payment of premiums. The County argued that "'insurance' could refer only to agreements where third parties agreed to insure the County against risk, not agreements whereby the County agreed to pay its losses itself." Brown County, 300 Wis. 2d 547, ¶14. Agreeing with the County, the court of appeals explained that "the only question that matters is who is liable: the County or someone else." Id., ¶15.

¶42 If the court of appeals in Brown County had analyzed whether the County's self-insured retention shifted risk in exchange for premiums, the court would still have concluded that the County's self-insured retention was not "other insurance" in that case. As Hillegass explained, Burlington "chose to retain its own risk for the first $1 million rather than pay premiums to a third-party insurer." 176 Wis. 2d at 82. In contrast, the County chose to avoid that risk by purchasing a second primary insurance policy without a deductible. Thus, the Hillegass risk analysis still allows for an exception to the general rule in cases where a self-insured party chooses to purchase additional liability insurance without a deductible or self-insured retention.

¶43 In sum, we agree with both the circuit court and the court of appeals that Hillegass, and not Brown County, controls the outcome of this case. Accordingly, we conclude that Menard's self-insured retention is "other applicable liability

16

insurance" under the Millers First policy's "other insurance clause."

IV.

¶44 We address next the issue raised in Millers First's petition for review. It contends that the court of appeals erred when it concluded that Millers First breached its duty to defend Menards.

¶45 Millers First's duty to defend stems from Menard's status as a permissive user of the plaintiff's vehicle. In Blasing, this Court concluded that a Menard employee was a permissive user under a customer's automobile insurance policy. 356 Wis. 2d 63, ¶41. Blasing also determined that the automobile insurer has a duty to defend and indemnify a permissive user. Id., ¶42-44. However, Blasing did not address the issues we now face.

¶46 In addressing its duty to defend, Millers First's policy states that Millers First "will settle or defend, as we consider appropriate, any claim or suit asking for [covered] damages." It further states: "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We are not obligated to provide defense after we have paid our limits of liability in settlement of claims or suits."

¶47 The declaration page of Millers First's policy provides a limit of liability of $100,000: "DESCRIPTION OF COVERED VEHICLES, LIMITS OF LIABILITY AND PREMIUMS CHARGED. COVERAGE IS PROVIDED WHERE A PREMIUM AND LIMIT OF LIABIITY IS

17

SHOWN." The "PER PERSON LIMIT [FOR] BODILY INJURY" is "100,000." It also sets forth the premium paid for this coverage.

¶48 Nevertheless, Millers First contends that its limits of liability should be $40,000, rather than the $100,000 set forth in its declaration page. Referring to the terms of its policy, Millers First argues that it was required to provide a defense only until its "limit of liability for this coverage has been exhausted."[6] Millers First contends that its liability "for this coverage" was exhausted by its $40,000 payment of its proportionate share of Burgraff's claim. Additionally, Millers First advances that because Menard is a permissive user, it would be a windfall for Menard if Millers First is obligated to defend Menard after Millers First settled its obligation with the plaintiff.

¶49 The general rule regarding an insurer's duty to defend until its policy limits are exhausted is set forth in St. John's Home of Milwaukee v. Continental Cas. Co., 147 Wis. 2d 764, 434 N.W.2d 112 (Ct. App. 1988). In St. John's, Aetna Casualty Insurance Company ("Aetna") and American National Fire Insurance Company ("American"), moved for partial summary judgment to limit the scope of St. John's covered damages. 147 Wis. 2d at 769. The circuit court determined that the maximum amount of

---

[6] Millers First agreed to defend Menard subject to a reservation of rights, but later conceded that it had a duty to defend, agreeing that Menard was entitled to coverage under Burgraff's automobile policy.

claimed damages for which there was coverage under the Aetna and American insurance policies was $11,400.  Id. at 778-79. American deposited $11,400 with the circuit court as tender to St. John's to cover the insurers' maximum potential liability for the claims.  Id. at 779.  According to the circuit court, Aetna and American had no duty to defend after the $11,400 was tendered as payment of the insurers' maximum potential liability.  Id. at 779.

¶50 Reversing the circuit court's ruling, the court of appeals explained that the circuit court was "incorrect in holding that if the insurers paid the sum of $11,400, they owed no duty to defend."  Id. at 787.  St. John's  explicitly held that "maximum potential liability" cannot be equated with "maximum policy limits."  Id.  The St. John's court explained that "[i]f an insurer owes any money at all under its insurance policy, it must defend, because Wisconsin is one of those states which requires an insurer to exhaust its total policy limits before it is freed from the duty to defend."  Id.  Thus, even though Aetna and American tendered payment of their maximum potential liability of $11,400, they continued to have a duty to defend because they had not paid their full policy limits.

¶51 Here, as in St. John's, Millers First's $40,000 payment to the plaintiffs was less than its $100,000 policy limits.  Although Millers First's $40,000 payment may represent its maximum potential liability for Burgraff's claim, the policy language does not limit the duty to defend based on maximum potential liability.  Thus, under St. John's, Millers First has

a duty to defend Menard until it pays its full $100,000 policy limits.

¶52 Any alteration in an insured's duty to defend must be explicitly stated in the policy. "Because any limitation on the insurer's duty to defend is in the nature of an exclusion, the defense coverage clause must clearly express the limitation." Gross v. Lloyds of London Ins. Co., 121 Wis. 2d 78, 88, 358 N.W.2d 266 (1984). There is no clause in Millers First's policy that alters its duty to defend if it shares responsibility for providing primary liability coverage with another insurer.

¶53 Although the Millers First policy was in effect before Blasing and thus did not contemplate Menard as a permissive user, the relationship between two primary insurers is not new or unique. Millers First included an "other insurance" clause in its policy which set forth the responsibilities of two primary insurers with respect liability coverage. The "other insurance" clause was applied by the circuit court and the parties' responsibilities were pro-rated according to terms of the policy.

¶54 Millers First's policy specifically provides for a pro-rata share of liability payments, but does not contain a similar pro-rata clause for defense costs. Certainly Millers First could have included a similar clause with respect to concurrent insurers' duty to defend, but did not write its policy to include a pro-rated duty to defend. It is now asking us to read such a clause into the policy. We decline to do so here. We will not re-write Millers Firsts' policy language.

20

¶55    Instead, we will follow the well-established rules of insurance contract interpretation.    Insurance policies are interpreted as they would be by a reasonable person in the position of the insured.    State Farm, 251 Wis. 2d 561, ¶28. "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses-so long as the language conforms to statutory and administrative law——ambiguity in that language is construed in favor of an insured seeking coverage."    Froedtert, 317 Wis. 2d 54, ¶43.    This court will not now create an exclusion with respect to Millers First's duty to defend that it did not write into its own policy.

¶56  We also reject Millers First argument that Teigen and Loy stand for the proposition that Millers First can settle for less than its limits of liability and be released from its duty to defend.    In Teigen v. Jelco of Wis. Inc., an insurer was relieved of its duty to defend after it used a Loy release to settle with the plaintiffs.    124 Wis. 2d 1, 367 N.W.2d 806 (1985).    A Loy release allows the plaintiff to settle for less than the primary insurer's policy limits by giving the secondary or excess insurance carrier credit for the full amount of the policy limits.    Loy v. Bunderson, 107 Wis. 2d 400, 417, 320 N.W.2d 175 (1982).    The parties, however, did not enter into a Loy Release here.    They instead settled for a proportionate amount of the verdict without giving credit up to the policy limits.

¶57  We agree with the court of appeals that the only reasonable interpretation of the term "limit of liability" is

the $100,000 limit of liability listed on the insurance policy's declarations page. Under the unambiguous policy language, Millers First was required to provide a defense for Menard until it paid its $100,000 limit of liability. Like the court of appeals, we determine that Millers First breached its duty to defend when it withdrew its defense of Menard following the settlement.

V.

¶58 Having concluded that Menard's self-insured retention is "other applicable liability insurance" and that Millers First breached its duty to defend Menard, this case is remanded to the circuit court. Upon remand, the circuit court must make a determination of damages. We discuss next the nature of available damages to provide guidance to the circuit court.[7]

¶59 Menard relies on Newhouse by Skow v. Citizens Sec. Mut. Ins. Co. for the proposition that Millers First must pay damages including: (1) the amount of the judgment or settlement plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach. 176 Wis. 2d 824, 838, 501 N.W.2d 1 (1993). It reads Newhouse too

---

[7] After oral argument, we ordered the parties to file letter briefs addressing the following issues: (1) What type of damages can be claimed if Millers First is found to have breached its duty to defend?; and (2) Are the damages available affected by the fact that Millers First defended until the circuit court approved Millers First's settlement with the plaintiff?

broadly. Just as the damages awarded in Newhouse were based on the facts of that case, the damages here depend on the unique facts of this case. The test, however, remains the same.

¶60 Newhouse sets forth the test as follows: "The insurance company must pay damages necessary to put the insured in the same position he would have been in had the insurance company fulfilled the insurance contract." Id. at 838. "[A] party aggrieved by an insurer's breach of its duty to defend is entitled to recover all damages naturally flowing from the breach." Id. at 830.

¶61 In Newhouse, neither the insurer nor its insured participated in the trial. Id. at 832. During the course of the trial, each of the other defendants settled separately with the plaintiffs. Id. Judgment was entered against the insured in the amount of $588,003.70, which was in excess of the $50,000 policy limits. Id. The Newhouse court concluded that "an excess judgment is properly included in the damages for breach of an insurer's duty to defend, if the excess judgment was a natural or proximate result of the breach." Id. at 838.

¶62 As the Seventh Circuit explained in Hamlin Inc. v. Hartford Accident and Indem. Co., 86 F.3d 93, 95 (7th Cir. 1996), Newhouse "is explicit that the insured must show that he was made worse off by the breach than he would have been had the breach not occurred." The Hamlin court considered whether the defendant had as good of a defense as he would have had if the insurer provided counsel. Id. at 95. It observed that, "[t]his insurer did not pay the entire bill for Hamlin's defense. But

23

neither is Hamlin some hapless individual who could not afford a good defense unless his insurer or insurers picked up the full tab." Id. In this case, Menard is analogous to the defendant in Hamlin, not the insured in Newhouse.

¶63 The court in Hamlin was concerned about a windfall. It explained that to award the entire $2.6 million verdict to Hamlin would result in a windfall, which would be punitive in nature to the insurer. Id. Punitive damages are not awarded unless an insurance company acts in bad faith. Id. (citing Weiss v. United Fire & Casualty Co., 197 Wis. 2d 365, 397, 541 N.W.2d 753 (1995)). Here there is no allegation that Millers First acted in bad faith when it withdrew its defense of Menard. Likewise, it would be a windfall for Menard if Millers First were ordered to pay the entire verdict in this case.

¶64 Just as in Hamlin, Menard cannot demonstrate that the amount of the jury verdict was a result of the breach. Menard chose its own counsel and there is no assertion that it would have achieved a better result at trial had Millers First chosen Menard's counsel. See 86 F.3d at 95. Unlike the excess judgment against the defendant in Newhouse, the jury verdict against Menard was for less than the policy limits. Thus, Menard is not entitled to damages in the amount of the jury verdict because the verdict amount does not flow naturally from the breach.

¶65 Menard relies on Radke v. Fireman's Fund Ins. Co., for the proposition that Wisconsin courts have not adopted Hamlin's analysis. 217 Wis. 2d 39, 48, 577 N.W.2d 366 (Ct. App. 1998).

24

However, the Radtke court simply distinguished Hamlin on the grounds that Hamlin involved multiple insurers. Id. at 48. According to Radtke, "[t]he key difference to the Hamlin court was that Hamlin involved multiple insurers, one which accepted the tender of defense and paid for a portion of Hamlin's legal defense bill." Id. at 48. The fact that Hamlin had multiple insurers, one of which accepted the tender of defense and paid for a portion of the legal bill, relates to the issue of whether the insured was worse off after the breach. It is from this standpoint that we analyze the present case.

¶66 The facts in Radtke are also distinguishable from the present case. The insurer denied coverage and refused to defend Radtke. Id. at 42. Radtke settled with the plaintiff and filed suit against the insurer seeking reimbursement of attorney fees and his settlement payment. Id. The issue in Radtke was whether the insurer could raise its coverage defenses after it breached its duty to defend. The court held that because the insurer had breached its duty to defend, "it may not now challenge or otherwise litigate the coverage issues." Id. at 49. It concluded that the insurer "is liable to Radtke for the costs of defending the suit, the amount recovered from Radtke by settlement and any additional damages caused by Fireman's Fund's breach of its contract." Id.

25

¶67 Unlike in Radtke, Millers First accepted Menard's tender of defense.[8] Millers First defended Menard until it settled its proportionate share of the claim. Due to its self-insured retention, Menard had responsibility for five-sixths of the verdict. The plaintiffs in Radtke and Newhouse would not have been responsible for the verdict except for the insurers' refusal to indemnify and defend. In contrast, Menard would have had responsibility for the verdict regardless of whether Millers First breached its duty to defend. Here, Menard has concurrent liability because of its $500,000 self-insured retention.

¶68 In order to satisfy its duty to defend, Millers First had various options including: (1) pay its $100,000 limit of liability and be relieved of its duty to defend; (2) settle with the plaintiffs for its proportionate share of the claim and use a Loy release to give Menard credit for the full amount of the $100,000 policy limits; or (3) settle with the plaintiff for its proportionate share of the claim and continue to defend Menard. Instead, Millers First settled with the plaintiff for its proportionate share of the claim, but withdrew defense of Menard following settlement.

¶69 To put Menard in the position it would have been in prior to the breach, Millers First must pay damages to Menard in the amount of costs and attorney fees. Menard is not claiming

---

[8] During oral argument, Millers First twice stated that it was not challenging its initial duty to defend, explaining "we have not appealed that issue" and "we at the circuit court level did accept coverage."

26

attorney fees and costs incurred prior to the breach of the duty to defend. Millers First suggests that defense costs should be pro-rated between it and Menard. Had Millers First put a pro-rated clause in its policy for defense costs as it did for its liability for loss, then defense costs could be pro-rated. However, for the reasons stated above, we decline now to rewrite its policy. See majority op., ¶¶55-56.

¶70 Although the dissent asserts that we ought to apply equitable contribution under the facts in this case, we find little support for this approach under Wisconsin law. In Plastics Eng'g Co. v. Liberty Mut. Ins. Co., we expressly determined that we would not pro rate liability among insurers when the policy language did not provide for it. See 2009 WI 13, ¶¶51-60, 315 Wis. 2d 556, 759 N.W.2d 613. The majority opinion in Plastics Eng'g Co., authored by Justice Ziegler, explained: "In our analysis, we are again driven by the policy language. Liberty Mutual's policy contains no language that limits its obligation to a pro rata share." Id., ¶55. "Thus, to insert the pro rata language, we would have to rewrite the insurance policy." Id., ¶59.

¶71 In asserting that equitable contribution of attorney fees should be applied here, the dissent leaps over a necessary threshold determination. It fails to address whether an insurer that breached its duty to defend should be entitled to equitable contribution of attorney fees.

¶72 The Wisconsin court of appeals previously has refused to apply equitable contribution when there has been a breach of

27

the duty to defend. See Se. Wis. Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc., 2007 WI App 185, ¶64, 304 Wis. 2d 637, 738 N.W.2d 87. Although the dispute in Mitsubishi involved a primary and excess carrier, the policy that a primary insurer should not be rewarded for a refusal to honor its duty to defend applies here as well:

> We perceive no good policy reason to reward Travelers . . . for its repeated refusal to defend——even after being repeatedly told it had a contractual duty to do so——by reducing the amount the trial court has determined it owed. Such a reduction would reward a primary carrier for a wrongful refusal to defend and create something akin to a litigation expense game of "chicken"——with offsets going to the obligated primary insurer who breached its duty.

Id., ¶64. The Mitsubishi court further explained: "We decline Travelers' invitation to thrust the trial court into this new, and in this case unnecessary, sea of litigation." Id.

¶73 In other jurisdictions as well, a breach of a duty to defend precludes application of equitable contribution. For example, the dissent relies on Cargill Inc. v. Ace Am. Ins. Co., 784 N.W.2d 341, 354 (Minn. 2010), which states that a "breach of a duty to defend precludes application of an equitable right to contribution." See also Nat'l Indem. Co. v. St. Paul Ins. Companies, 724 P.2d 544, 545 (Ariz. 1986) ("When an insurer has a duty to defend the insured, there should be no reward to the insurer for breaching that duty . . . . Under the principle of equitable subrogation, the insurer which has performed the duty to provide a defense to its insured should be able to compel

28

contribution for a share of the cost of defense from another insurer . . . .").

¶74 Likewise, in Cont'l W. Ins. Co. v. Colony Ins. Co., 69 F. Supp. 3d 1075, 1086 (D. Colo. 2014), which the dissent also cites, the court found that "a participating insurer is entitled to equitable contribution from a non-participating insurer, both having a duty to defend, when the former provides a complete defense to an insured against a common risk . . . ." (emphasis added). Here, Millers First did not provide a complete defense because it withdrew its defense after settlement with the plaintiffs in breach of its obligation to provide a defense until its limits of liability were exhausted.

¶75 The dissent argues that Millers First's breach of its duty to defend should not preclude equitable contribution. It relies on an Arizona court of appeals decision, Nucor Corp. v. Emp'rs Ins. Co. of Wausau, 296 P.3d 74 (Ariz. Ct. App. 2012), that is readily distinguishable.

¶76 Nucor involved a class action lawsuit in which every insurer breached its duty to defend. As the Nucor court explained, equitable contribution was allowed because all the insurers breached their duty to defend:

> Nucor's argument also fails to acknowledge that all of its insurers refused to defend Nucor at some time. All refused to defend Nucor in the ADEQ proceeding, not just Wausau. Hartford had to be sued twice by Nucor for bad faith before it acknowledged coverage. Travelers did not defend Nucor in the class action litigation until Nucor sued it for bad faith.

29

Id., ¶44. That is not the case here. Only Millers First breached its duty to defend. There is no allegation that Menard failed in its duty to defend. It was Menard, not Millers First, that shouldered the cost of litigation after Millers First settled with Burgraff.

¶77 Millers First could have followed the procedure set forth under well-established Wisconsin law. When coverage is disputed, an insurer should request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved. Newhouse, 176 Wis. 2d at 836; see also Elliot v. Donahue, 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992). Had it done so, Millers First would not have breached its duty to defend. Instead, Millers First relied on the circuit court's summary judgment order and withdrew its defense of Menard.

¶78 "An insurance company breaches its duty to defend if a liability trial goes forward during the time a no coverage determination is pending on appeal and the insurance company does not defend its insured at the liability trial." Newhouse, 176 Wis. 2d at 836. "When an insurer relies on a lower court ruling that it has no duty to defend, it takes the risk that the ruling will be reversed on appeal." Id.

¶79 In sum, we are in accord with the court of appeals' determination that Menard's self-insured retention is "other applicable liability insurance" under the Millers First policy's "other insurance clause." We also agree with the court of appeals conclusion that Millers First breached its duty to

defend when it withdrew its defense of Menard following the settlement.

¶80 Accordingly, we affirm the court of appeals and remand to the circuit court for a determination of the amount of costs and attorney fees Menard incurred after Millers First breached its duty to defend.

*By the Court.* – The decision of the court of appeals is affirmed and the cause is remanded to the circuit court for a determination of damages.

¶81 MICHAEL J. GABLEMAN and REBECCA G. BRADLEY, J.J., did not participate.

¶82 PATIENCE DRAKE ROGGENSACK, C.J. *(concurring in part, dissenting in part).* I concur in the majority opinion's conclusion that Millers First breached its duty to defend by withdrawing its defense prior to exhausting its $100,000 limit of liability.[1] I also concur in the majority opinion's conclusion that Menard's self-insured retention constitutes "other applicable liability insurance" under Millers First's "other insurance clause."[2]

¶83 However, I write in dissent because, contrary to the majority opinion, I conclude that Wisconsin has applied equitable contribution to other shared obligations and should apply it to defense costs between two primary insurers, Millers First and Menard. Millers First and Menard insured the same entity, Menard; they had the same primary obligation to defend Menard against Burgraff's claims; and Millers First contends that it paid more than its fair share of defense costs. Therefore, I conclude that the matter should be remanded to the circuit court to apply equitable contribution principles to determine how best to allocate the total defense costs incurred by Millers First and Menard. Accordingly, I respectfully concur in part and dissent in part from the majority opinion.

## I. BACKGROUND

¶84 For the most part, the majority opinion sets forth facts that underlie the dispute before us. Therefore, I will

---

[1] Majority op., ¶3.

[2] Id., ¶5.

1

not repeat them in full.  However, I do relate a few additional, relevant facts.

¶85  Millers First provides automobile liability insurance to Kenneth Burgraff, who was injured when a Menard employee attempted to load items purchased from Menard into Burgraff's vehicle.  Burgraff brought suit against Menard for personal injuries.  Millers First accepted Menard's tender of defense, subject to a reservation of rights, because in Blasing v. Zurich Am. Ins. Co., 2014 WI 73, ¶41, 356 Wis. 2d 63, 850 N.W.2d 138, we concluded that one who loads property into a vehicle is a "permissive user" of the vehicle and, accordingly, is entitled to a defense under the automobile liability policy for injuries alleged to have been caused by the loading.

¶86 Millers First hired attorney Edmund Manydeeds to defend both itself and Menard on the merits of Burgraff's claims.  Millers First paid the entire cost of that defense until Millers First settled Burgraff's liability claim against it and was granted summary judgment dismissing it from the suit.[3]

¶87  Prior to withdrawing its defense, Millers First moved for pro rata apportionment of defense costs, asserting that Menard had a duty to defend itself under its self-insured retention.  The circuit court denied the motion.  The case proceeded to trial where Burgraff was awarded damages in excess

---

[3] Prior to Millers First's acceptance of Menard's tender of defense, Menard's in-house counsel appeared for Menard on the merits, as well as with respect to coverage issues.

of the amount that Millers First paid for its share of liability. Menard provided its own defense at trial.

¶88 Menard appealed the circuit court's summary judgment decision. The court of appeals affirmed the circuit court's conclusion that Menard's self-insurance constitutes "other applicable liability insurance," it reversed the decision regarding Millers First's duty to defend, and we granted review.

¶89 Subsequent to oral argument, we ordered the parties to brief the following issues: "(1) What types of damages can be claimed if Millers First is found to have breached its duty to defend?[;] (2) Are the damages available affected by the fact that Millers First defended until the circuit court approved Millers First's settlement with the plaintiff?"

¶90 Millers First responded as follows:

> If this court were inclined to adopt the position, advanced by Menard, that it was entitled to a continued defense, notwithstanding that Millers First completely satisfied its complete covered claims duties, then the damages to be awarded should clearly reflect and take account of the concurrent coverage obligations of the respective parties. By virtue of the circuit court ruling, affirmed by the Court of Appeals, Millers First [owed] only one-sixth of the total damages. While the trial court did not specifically address the issue of proration of defense costs, the logical corollary to that finding is that Millers First would have owed only one-sixth of the total defense costs involving fees and costs as well. The most Menard could hope to recover, therefore, would be reimbursement of one-sixth of the total defense costs generated in this matter. Since Millers First paid for 100% of the total defense costs until it was allowed to withdraw, Millers First should be given credit for those costs which it bore up to that point.

(Millers First Supp. Br. 7 (emphasis omitted).)

3

¶91 Not surprisingly, Menard holds the opposite view, contending that pro rata apportionment of defense costs is not appropriate and that it is "entitled to all of its defense costs incurred in the defense of the underlying liability claim from the date Millers First withdrew its defense." (Menard Supp. Br. 3.) Menard cites Plastics Eng'g Co. v. Liberty Mut. Ins. Co., 2009 WI 13, ¶60, 315 Wis. 2d 556, 759 Wis. 2d 613, for the proposition that Wisconsin law does not allow for pro rata allocation of defense costs. (Menard Supp. Br. 3-4.)

## II. DISCUSSION

### A. Majority Opinion

¶92 The majority opinion apparently agrees with Menard, stating that, "[h]ad Millers First put a pro-rated clause in its policy for defense costs as it did for its liability for loss, then defense costs could be pro-rated. However, . . . we decline now to rewrite its policy."[4] Without express contractual language, the majority opinion refuses to allow the circuit court, on remand, to consider apportioning defense costs between Millers First and Menard.[5] Instead, the majority opinion remands the matter to the circuit court to determine the amount of defense costs that Menard has incurred since Millers First's withdrawal and, apparently, intends Millers First to bear 100% of this burden, just as it did prior to the circuit court's

---

[4] Id., ¶69.

[5] Id.

4

grant of summary judgment that dismissed Millers First from Burgraff's lawsuit.[6]

¶93 As I explain below, this conclusion is inconsistent with the majority opinion's holding that Menard's self-insured retention constitutes "other applicable liability insurance," thereby rendering it a concurrent primary insurer with Millers First, with the same duty to defend Menard that Millers First had.[7] The majority opinion explicitly recognizes Menard's duty to provide a defense against Burgraff's claims and states, "Menard is required to pay the first $500,000 worth of damages and <u>defense costs</u> arising from an occurrence."[8] Notwithstanding this acknowledgement, the majority opinion simultaneously overlooks Menard's duty to contribute to the costs of the defense that it was obligated to provide as a primary insurer.

## B. General Equitable Principles

¶94 We have not directly addressed pro rata apportionment of defense costs between concurrent primary insurers. However, other jurisdictions have done so and have apportioned those fees based on equitable contribution principles. "Generally, where two or more insurers' policies potentially provide coverage and one of them bears the defense burden alone, the insurer bearing that burden is entitled to equitable contribution from the non-defending carriers." Lee R. Russ & Thomas F. Segalla, 14 <u>Couch</u>

---

[6] <u>Id.</u>

[7] <u>See</u> <u>id.</u>, ¶¶32, 43, 79.

[8] <u>Id.</u>, ¶14 (emphasis added).

on Insurance § 200:35 (3d ed. 2007).[9]  "[T]he aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others."  Lee R. Russ & Thomas F. Segalla, 16 Couch on Insurance § 222:98 (3d ed. 2000).[10]

¶95 Although Millers First's contract does not direct that defense costs are to be shared with other primary insurers, apportioning defense costs through equitable contribution is appropriate.  Id. (explaining that "equitable contribution applies only between insurers, and only in the absence of contract, and therefore it has no place between insurer and insured, which have contracted the one with the other").  This is because "all contractual duties or obligations flow only to the insured."  Douglas R. Richmond, Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 Pepp. L. Rev. 1373, 1426 (1995).  These duties and obligations do not flow "between or among the insurers."  Id.

¶96 In the instant case, Millers First is a fortuitous insurer with respect to Menard.  However, Menard also wears

_____

[9] I recognize that a minority of jurisdictions have rejected the equitable contribution theory as a basis for apportioning defense costs.  Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 16:6 (database updated Dec. 2015); Lee R. Russ & Thomas F. Segalla, 14 Couch on Insurance § 200:35 (3d ed. 2007).

[10] As indicated in this writing's citations, hard copies of the Third Edition of Couch on Insurance that are available to the court exhibit varying dates of publication.

another hat.  Menard is also an <u>insurer</u> with a duty to defend itself.[11]  Millers First's obligations arising out of its policy language run to Menard as an <u>insured</u> rather than to Menard as an <u>insurer</u>.  Millers First does not seek to allocate defense costs between itself and Menard as an <u>insured</u> but, rather, between itself and Menard as another <u>insurer</u>.  Therefore, it is of no consequence that Millers First's policy language does not provide for pro rata apportionment of defense costs between itself and another primary insurer.  Stated otherwise, the Millers First policy is a contract between Millers First and those who are insureds, not a contract between Millers First and other primary insurers.

¶97 Apportioning costs between concurrent primary insurers, who insure the same person for the same risk, is the context in which courts apply equitable contribution principles out of fairness rather than out of contract.  <u>See, e.g.</u>, <u>Cont'l W. Ins. Co. v. Colony Ins. Co.</u>, 69 F. Supp. 3d 1075, 1087 (D. Colo. 2014) (applying equitable contribution to require both primary insurers to bear defense costs); <u>Cargill, Inc. v. Ace Am. Ins. Co.</u>, 784 N.W.2d 341, 353-54 (Minn. 2010) (concluding that primary insurer has a right to seek equitable contribution from other primary insurer for defense costs); <u>Am. Simmental Ass'n v. Coregis Ins. Co.</u>, 282 F.3d 582, 589 (8th Cir. 2002) (apportioning total defense costs in same ratio as each insurer's policy provided for total liability); <u>Md. Cas. Co. v.</u>

---

[11] Majority op., ¶¶14, 32, 43, 79.

7

*Nationwide Mut. Ins. Co.*, 81 Cal. App. 4th 1082, 1089 (Cal. Ct. App. 2000) (explaining that equitable contribution of defense costs equalizes a common burden shared by primary insurers).

¶98 As mentioned above, it does not appear that Wisconsin courts have considered whether equitable contribution may be applied to apportion defense costs between concurrent primary insurers. The court of appeals refused to apply equitable contribution, at the request of a primary insurer, to apportion defense costs incurred by the excess insurer, who defended the amended complaint that the primary insurer repeatedly refused to defend. Se. Wis. Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc., 2007 WI App 185, ¶¶62-64, 304 Wis. 2d 637, 738 N.W.2d 87. The court of appeals noted that equitable contribution was inapplicable because the excess insurer sought reimbursement for defense costs it incurred while shouldering a defense that rightly should have been met by the primary insurer. Id.

¶99 The majority opinion cites Southeast Wisconsin Professional Baseball, asserting that it precludes equitable contribution because Millers First did not provide a defense until its limit of liability was exhausted.[12] However, Menard also did not provide a complete defense, which the majority opinion recognizes that it was obligated to do.[13] The majority opinion gives no reason for treating two primary insurers so differently.

---

[12] Id., ¶72.

[13] Id., ¶14.

¶100 We previously have explained that "what gives rise to the right of contribution is that one co-obligor has discharged more than his [or her] fair equitable share of a common debt." Kafka v. Pope, 194 Wis. 2d 234, 243, 533 N.W.2d 491 (1995) (explaining that the right to seek equitable contribution "is premised on two conditions: (1) the parties must be liable for the same obligation; and (2) the party seeking contribution must have paid more than a fair share of the obligation").

¶101 The court of appeals has applied the foregoing two-part test for equitable apportionment of losses between two insurance companies. In McGee v. Bates, 2005 WI App 19, ¶1, 278 Wis. 2d 588, 691 N.W.2d 920, one insurance company sought contribution from another insurance company for a portion of the losses that it incurred by settling with plaintiffs. The court of appeals concluded that the two insurance companies shared liability for the same obligation because they both provided coverage to the same person for the same loss. Id., ¶9. The court of appeals then remanded the matter to determine whether the insurer seeking contribution bore more than its fair share of the losses. Id., ¶11.

C. Equitable Contribution

¶102 Given the foregoing equitable principles, I would remand the issue of equitable contribution to the circuit court to apportion defense costs between the two primary insurers, Millers First and Menard, who insured the same entity, Menard, and who had primary obligations to defend against Burgraff's

9

claims. See Nucor Corp. v. Emp'rs Ins. Co. of Wausau, 296 P.3d 74, 84 (Ariz. Ct. App. 2012).

### 1. Standard of review

¶103 Whether equitable contribution may be applied in a given factual context is a question of law for our independent review. McGee, 278 Wis. 2d 588, ¶4; Am. Simmental, 282 F.3d at 586.

### 2. Kafka/McGee test

¶104 To be entitled to equitable contribution of defense costs in the case before us, Millers First must prove two conditions: (1) both Menard and Millers First are liable as primary insurers for Menard's defense of Burgraff's claims; and (2) Millers First has paid more than its fair share of defending against Burgraff's claims.

### a. liability for same obligation

¶105 In order to establish a shared liability for defense of Burgraff's claims, Millers First must establish that Menard, which was self-insured up to $500,000, had a duty to defend itself when Burgraff was injured through the negligence of Menard's employee. In this regard, Menard's self-insured retention provides that it "shall be eroded by allocated claim costs including defense . . . costs." This demonstrates that Menard, as an insurer, has a duty to defend itself, as an insured. The majority opinion recognizes that Menard's self-insured retention gives Menard a duty "to pay . . . defense costs arising from an occurrence."[14]

---

[14] Id., ¶14.

¶106 This reasoning is supported by Hillegass v. Landwehr, 176 Wis. 2d 76, 85, 499 N.W.2d 652 (1993), where we concluded that self-insurance is other collectible insurance and should be treated the same as if it were contracted with a third-party insurer. The majority opinion also concludes that Menard's self-insured retention constitutes "other applicable liability insurance," thereby rendering Menard a concurrent primary insurer, as is Millers First.[15] Millers First and Menard each provides coverage for third-party liability as concurrent primary insurers, with Millers First being responsible for one-sixth of third-party liability and Menard being responsible for five-sixths of such obligation.[16] As the majority opinion notes, but for the fortuitousness of Millers First's policy providing one-sixth coverage, Menard would have been obligated "to pay the first $500,000 worth of damages and defense costs arising from an occurrence."[17] I agree.

¶107 Furthermore, "[i]n the context of liability insurance, a primary insurer generally has the primary duty to defend the insured . . . ." 14 Couch on Insurance § 200:35. I see nothing in Menard's self-insured retention that removes Menard's duty to defend itself. Furthermore, I fail to see the basis for the majority opinion's implicit assumption that, by Millers First

---

[15] Id., ¶¶32, 43, 79.

[16] Millers First and Menard do not dispute this apportionment of coverage for third-party liability.

[17] Id., ¶14.

11

accepting its defense obligations, Menard's defense obligations are somehow eliminated. Accordingly, I conclude that Menard and Millers First share the obligation to defend Menard from Burgraff's claims.

b. inequitable payment

¶108 When two persons share the same obligation and one obligor claims to have paid more than its fair share, a claim for equitable contribution may be made. Kafka, 194 Wis. 2d at 243. Many courts recognize equitable contribution to satisfy such a claim; however, courts employ differing methods to apportion defense costs between concurrent primary insurers. See Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 5:8 (database updated Dec. 2015) ("[M]ethods include pro rata allocation based upon contract limits, equal apportionment, and time on the risk.").

¶109 The majority of jurisdictions allocate defense costs based on the policies' apportionment of liability limits. See Lee R. Russ & Thomas F. Segalla, 15 Couch on Insurance § 217:9 (3d ed. 1999). "The courts using this method find that each insurer should bear the costs of defense in proportion to its contract limits." Seaman & Schulze, § 5:8.

¶110 As between Millers First and Menard, there is $600,000 of combined coverage for liability awards, with one-sixth of the total liability exposure being Millers First's and five-sixths of the liability exposure Menard's. Using the one-sixth/five-sixths ratio, Millers First would be liable for one-sixth of the

12

total defense costs paid by Millers First and Menard, and Menard would be responsible for the balance.

¶111 Alternatively, based upon each insurer's separate duty to defend the insured, some courts allocate defense costs equally. Id. As noted, there are various other methods by which courts apportion defense costs between insurers. Id. However, choosing how to allocate the total defense costs between Millers First and Menard may require fact-finding that is not appropriate in this review. Md. Cas., 81 Cal. App. 4th at 1094 (explaining that circuit court has "broad discretion" in determining how to properly allocate defense costs). Therefore, were I writing for a majority of the court, I would remand to the circuit court to make the findings necessary to determine how, based on equitable contribution, the total defense costs should be allocated between Millers First and Menard.

¶112 Contrary to the majority opinion, I would not preclude Millers First from seeking equitable contribution because it breached its duty to defend by withdrawing prior to the exhaustion of its $100,000 limit of liability.[18] Of course, in some instances, it may be inequitable to permit an insurer to benefit from pro rata allocation of defense costs where that insurer has refused to defend the insured at all. See Cargill, 784 N.W.2d at 354; Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 940 F. Supp. 2d 898, 929-30 (D. Minn. 2013). However, that did not occur here, as Millers First fully

---

[18] Id., ¶¶71-74.

13

defended Menard until it was dismissed from the lawsuit by the circuit court.

¶113 The effect of the majority opinion is to remove Menard's duty as a primary insurer to defend itself. In so doing, the majority opinion treats two primary insurers very differently and by its directions on remand, inequitably imposes 100% of defense costs on the fortuitous insurer, Millers First. Even in instances where an insurer has breached its duty to defend, courts apportion defense costs between insurers where it is equitable to do so. See, e.g., Cont'l Cas. Co., 940 F. Supp. 2d at 929-30 (explaining that barring an insurer from seeking pro rata allocation, where that insurer has significantly contributed to defense, does not "comport with the equitable nature of contribution").

¶114 In Nucor, 296 P.3d at 84-85, the court permitted an insurer, which previously had breached its duty to defend, to seek equitable contribution from other, concurrent primary insurers that had likewise refused to defend the insured at various points in time. In rejecting the argument that an insurer was not entitled to pro rata apportionment after breaching its duty to defend, the court reiterated the overarching purpose of equitable contribution, which is "to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." Id. at 85 (internal quotation marks omitted) (quoting Fireman's Fund Ins. Co. v. Md. Cas. Co., 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998)).

14

¶115 Similar to the court in Nucor, I would not preclude Millers First from seeking equitable contribution simply because Millers First did not continue to defend until its limit of liability was reached. Menard had a concurrent obligation to defend that should not be overlooked. Precluding pro rata allocation here permits Menard to foist a mutual obligation wholly onto Millers First, thereby profiting at the expense of Millers First. See Cont'l Cas., 940 F. Supp. 2d at 929 (explaining that such a holding "would not accomplish substantial justice").

¶116 Additionally, I recognize that "[a] breach of the obligation to defend should not be encouraged, but the rule which allows an insurer to avoid the costs of defense tends to encourage an avoidance of the insurer's responsibilities." Nat'l Indem. Co. v. St. Paul Ins. Cos., 724 P.2d 544, 545 (Ariz. 1986). While erroneously asserting that "[o]nly Millers First breached its duty to defend,"[19] the majority opinion precludes pro rata allocation of defense costs between concurrent primary insurers who have the same obligation to defend against Burgraff's claims.[20] The majority opinion offers few insights for future insurers who may find themselves in a similar situation.

---

[19] Id., ¶76. Menard had the same duty to defend as Millers first. However, Menard provided no defense until after Millers First was dismissed from the lawsuit, and the majority opinion allows Menard to ignore the obligation to contribute to its own defense.

[20] Id., ¶¶54, 69.

15

¶117 Finally, I note that Menard relies on our statements in Plastics Engineering for the proposition that Wisconsin law does not allow pro rata allocation of defense costs. In Plastics Engineering, the sole insurer sought to pay only those costs that were incurred in defending claims that were covered under the insurer's policy, while excluding defense costs for uncovered claims. Plastics Eng'g, 315 Wis. 2d 556, ¶51. "Under Wisconsin law, if coverage exists, an insurer must defend the entire suit even though some of the allegations fall outside the scope of coverage." Id. at ¶60. However, our statements in Plastics Engineering have nothing to do with equitable contribution of defense costs for Burgraff's litigation because here there are two primary insurers, both with a duty to defend.

III. CONCLUSION

¶118 I concur in the majority opinion's conclusion that Millers First breached its duty to defend by withdrawing its defense prior to exhausting its $100,000 limit of liability. I also concur in the majority opinion's conclusion that Menard's self-insured retention constitutes "other applicable liability insurance" under Millers First's "other insurance clause."

¶119 However, I write in dissent because, contrary to the majority opinion, I conclude that Wisconsin has applied equitable contribution to other shared obligations and should apply it to defense costs between two primary insurers, Millers First and Menard. Millers First and Menard insured the same entity, Menard; they had the same primary obligation to defend Menard against Burgraff's claims; and Millers First contends

16

that it paid more than its fair share of defense costs. Therefore, I conclude that the matter should be remanded to the circuit court to determine how best to allocate the total defense costs incurred by Millers First and Menard. Accordingly, I respectfully concur in part and dissent in part from the majority opinion.

¶120 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this opinion.